RECEIVED

MAR 23 2012

TONY R. MOORE, CLERK
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA, LOUISIANA

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

ALEXANDRIA DIVISION

| | |
|---|---|
| RAPHAEL LUNEAU | CIVIL ACTION NO. 09-1667 |
| -vs- | JUDGE DRELL |
| STATE FARM FIRE & CASUALTY CO. | MAGISTRATE JUDGE KIRK |

## RULING

Before the Court is a "Motion to Set Aside Dismissal, to Enforce Settlement Agreement, and for Penalty Damages and Attorney Fees" filed by Plaintiff, Raphael Luneau. (Document No. 95.) Defendant has opposed the motion, and the Court finds no need for oral argument. For the reasons set forth herein, the motion will be granted in part and denied in part.

Background

Plaintiff filed a "Suit on Contract" in the Ninth Judicial District Court, Rapides Parish, Louisiana, on August 17, 2009 contending State Farm Fire and Casualty Company ("State Farm"), insurer of Plaintiff's home and farm, had not made appropriate payments under the policy for damages allegedly incurred during Hurricane Gustav. Specifically, Plaintiff complained he had not received proper compensation for damage to lumber located in a "pole barn" and for replacement of his home's entire roof. Plaintiff also asked for the insurance contract to be reformed to correct what he claimed was an error in the declarations section regarding "replacement cost" coverage on certain

outbuildings. Plaintiff further alleged State Farm had acted in an arbitrary and capricious manner and in bad faith, such that he should recover penalties and attorney's fees and should be given additional time to make certain claims. (Document No. 1-1.) By way of a First Supplemental and Amending Complaint filed July 21, 2010, Plaintiff sought recovery for mental anguish damages related to State Farm's allegedly arbitrary and capricious behavior. (Document No. 29.)

On September 22, 2009, State Farm removed the action based on diversity of citizenship and a sufficient amount in controversy. (Document No. 1.) See 28 U.S.C. § 1332. State Farm answered the original petition on October 23, 2009 (Document No. 8), but it has not yet responded to the First Supplemental and Amending Complaint.

A large portion of the suit record documents motion practice related not to the substance of Plaintiff's claims and State Farm's defenses, but to discovery disputes, which required the Court's intervention. The Court was pleasantly surprised when it was eventually notified by counsel that the litigation had been amicably resolved. Therefore, an Order of Dismissal dated February 22, 2011 was entered, which provided, in part, "this action is DISMISSED, without prejudice to the right, upon good cause shown within sixty (60) days of the signing of this Order, to reopen the action if settlement is not consummated." (Document No. 94.) The present motion to set aside the dismissal and enforce the settlement agreement was timely filed on March 24, 2011, within the sixty-day reopening period.

Neither party contests they agreed to engage in and did engage in a private mediation of their differences on February 16, 2011. The Mediation Settlement Agreement ("Agreement") resulting from that effort states, in pertinent part:

> At the mediation held on Feb. 16, 2011, the undersigned parties agree to settle all claims they have or may have in the above captioned matter[1] in exchange for the payment to the plaintiff in the amount of $125,000.00, inclusive of all special damages.
>
> In exchange for the payment referenced above, the parties agree that this will be a full and complete release of all claims against State Farm in connection with the losses of Sept. 1, 2008[2] - (Gustave (sic) claims).
>
> The parties further agree that Def. (sic) to pay mediation expense. Plaintiff reserves their (sic) rights as to other pending cases.
>
> The parties also agree that all claims will be dismissed with prejudice. It is specifically understood that this is a binding settlement agreement enforceable under Louisiana law.

(Document No. 95-3, Exhibit "B".) The Agreement is signed by Plaintiff; his counsel, Roy Halcomb; and counsel for State Farm, David Strauss. It is unclear as to who wrote the non-typed portions of the above text, but they are in scribbled handwriting.

Plaintiff now argues he is entitled to penalties, attorney's fees, legal interest, and court costs, in addition to the $125,000 payment, because State Farm failed to remit the amount due within thirty days of the settlement, as required by Louisiana law. Specifically, he claims the Agreement is clear and shows the entire payment was to be made solely to Plaintiff, with no other payees on the check or draft.

---

[1] The "captioned matter" is the instant lawsuit.

[2] The Court notes Plaintiff's "Suit on Contract" alleges the damages occurred on or about September 2, 2008. (Document No. 1-1.)

3

Defendant, however, contends there was discussion at the mediation conference regarding how State Farm would allocate the payment under the various provisions of its policy.[3] Since Plaintiff allegedly represented he did not want to be involved in the allocation decision, Mr. Strauss claims he assumed State Farm had discretion to allocate the amount as it chose.

Defendant has submitted copies of correspondence between Mr. Strauss and Mr. Halcomb, which show that on February 21, 2011, within five days after the Agreement was executed, Mr. Strauss asked if any of three potential "loss payees" reflected in State Farm's records continued to have "a lien interest in the plaintiff's property." (Document No. 97-3, Exhibit "C.") Mr. Halcomb responded by letter dated February 28, 2011: "No one other than Mr. Luneau has an interest in the settlement funds and payment should be made accordingly in a timely fashion." (Document No. 97-4, Exhibit "D".)

Both attorneys wrote letters dated March 14, 2011 claiming to document a discussion they had that day. Mr. Strauss's correspondence noted State Farm's position that Red River Bank was a lien holder entitled to be included on any settlement check that contained funds allocated to "Coverage A" of the policy, which apparently covers structural damage to Plaintiff's home. Defense counsel also explained his appreciation of the crux of the dispute as follows:

> You explained it is your position that during our mediation we agreed that no part of the settlement would be allocated by State Farm to payment for structural damage to Mr. Luneau's home. I advised you that this is not my appreciation of our settlement, and that contrary to your understanding, you directly advised me in the presence of our mediator that you did not

---

[3] Neither party attached a certified copy of the applicable policy to any filing related to this motion, so we have no way of knowing what the provisions of that policy may be.

4

> wish to participate in the manner of how State Farm allocated the settlement as you did not wish to be bound by such allocation in other pending litigation involving insurance claims by Mr. Luneau on his property. As a result of that statement, I advised that if you did not wish to participate in the decision of how to allocate the funds then the allocation need not be part of the settlement agreement and State Farm would allocate based on the facts presented.

(Document No. 97-5, Exhibit "E.")

To resolve the problem, Mr. Strauss recommended issuing two checks: one for the amount of the settlement allocated to "structure" and made payable to both Plaintiff and Red River Bank; and one for the balance, made payable only to Plaintiff.

Mr. Halcomb responded there were no loss payees/lienholders noted on Mr. Luneau's policy, and,

> It was made clear at the mediation that Mr. Luneau would not sign anything, including the settlement agreement, if it required him to agree that any of the money was to be allocated to structure. . . . If it was State Farm's position that some amount should be allocated to structure and payment of this amount should be made to someone other than Mr. Luneau then this should have been made part of the agreement and it was not.
>
> . . . [T]he only possible motive that State Farm could have for now wanting to add the name of the lienholder to the settlement check is to have allocated some amount of the settlement as structure to benefit State Farm on the remaining claim that Mr. Luneau has against State Farm arising out of the water heater incident.

(Document No. 97-6, Exhibit "F.")

Mr. Halcomb then reiterated his request for full payment of the $125,000 solely to Plaintiff.

## Law and Analysis

"Although federal courts possess the inherent power to enforce agreements entered into in settlement of litigation, the construction and enforcement of settlement

agreements is governed by the principles of state law applicable to contracts generally." Crowell v. CIGNA Group Ins., 410 Fed.Appx. 788, 792, (5th Cir. 2011) (internal quotations and citations omitted). Louisiana Civil Code art. 3071 provides: "A compromise is a contract whereby the parties, through concessions made by one or more of them, settle a dispute or an uncertainty concerning an obligation or other legal relationship." "In order to be enforceable under Article 3071, a compromise either must be reduced to writing and signed by the parties or their agents, or must be recited in open court and be capable of transcription from the record of the proceeding." Lavan v. Nowell, 708 So.2d 1052 (La. 1998) (footnote omitted). "Such a compromise is valid only if the parties share a meeting of the minds as to their intent." Amy v. Schlumberger Technology Corp., 771 So.2d 669, 672 (La. App. 3d Cir. 2000) (citations omitted).[4]

As the Louisiana Supreme Court has explained:

> The meaning and intent of the parties to a compromise is ordinarily determined from the four corners of the instrument, and extrinsic evidence is inadmissible to explain or to contradict the terms of the instrument. When a dispute occurs regarding the scope of a compromise, extrinsic evidence can be considered to determine exactly what differences the parties intended to settle, but absent some substantiating evidence of mistaken intent, no reason exists to look beyond the four corners of the instrument to ascertain the parties' intent.

Trahan v. Coca Cola Bottling Co. United, Inc., 894 So.2d 1096, 1107, (La. 2005) (internal citations omitted).[5]

---

[4] See also, Rogers v. Mumford, 6 So.3d 848, 850 (La. App. 3d Cir. 2009).

[5] See also, Brown v. Drillers, Inc., 630 So.2d 741, 748-50 (La. 1994) and Ortego v. State, Dept. of Transp. and Development, 689 So.2d 1358, 1363-1364 (La. 1997).

Applying these principles to the situation before us, there is ample indication Plaintiff and State Farm did not share the same intent when the Agreement was signed. Within just a few days of executing the Agreement, the possibility of third party payees was being discussed between the attorneys. The phrase "in exchange for the payment to the plaintiff in the amount of $125,000.00" may easily be understood to include satisfaction of any potential third party claims or liens that might have been properly preserved. If this were not the case, counsel could simply have inserted the word "solely" before "to the plaintiff," and the document would have been more clear. Also relevant to this issue is that the Agreement's excluded portion addressed whether Plaintiff would indemnify and hold Defendant harmless from any claims of third parties. If no such claims existed, and Plaintiff was aware of this fact, why was the hold harmless language deleted? Perhaps this is a non-issue, but it certainly adds to the inherent ambiguity in the Agreement as written.

Particularly given the fact Plaintiff apparently has other claims pending against this insurer, one would expect the settlement agreement to be more comprehensive than the perfunctory "fill-in-the-blank" form used in this case. That document, which obviously was intended originally to deal with a personal injury claim rather than a property damage situation, was handwritten by an unknown party and contains abbreviations, misspellings, grammatical errors, reference to what appears to be the wrong date of claim, sloppy deletions, and a general unexplained notation looming above the text that says "Reserv. of rights."

Under these circumstances, we believe the parties did agree to the $125,000 figure, but, because the details of that payment were not clear, they did not actually complete the settlement. Therefore, we set aside our previous dismissal, but we will not enforce the Agreement, since it does not evidence a meeting of the minds.

On the penalties and attorney's fees requests, we do not award any such amounts in connection with the instant motion. However, it appears to us those will remain live issues on the merits of the case and may be reasserted in the future.

Conclusion

For the reasons set forth herein, Plaintiff's "Motion to Set Aside Dismissal, to Enforce Settlement Agreement, and for Penalty Damages and Attorney Fees" (Document No. 95) is GRANTED IN PART, to the extent our Order of Dismissal dated February 22, 2011 (Document No. 94) is VACATED. The Clerk of Court is, therefore, instructed to reopen this case. On all other grounds, the motion is DENIED. We will set this matter for pretrial conference by separate order.

SIGNED on this 23rd day of March, 2012 at Alexandria, Louisiana.

DEE D. DRELL
UNITED STATES DISTRICT JUDGE